## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERTO SANDOVAL, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:05-CR-0324-CAP-JFK-4 |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | CIVIL FILE NO. |
| | : | 1:10-CV-4207-CAP-JFK |

## MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Movant brings this 28 U.S.C. § 2255 motion challenging his convictions and sentences in this Court under the above criminal docket number. The matter is before the Court on the § 2255 motion, (Doc. No. 1284), the government's response, (Doc. No. 1307), and Movant's reply, (Doc. No. 1325). For the reasons stated below, it is **RECOMMENDED** that Movant's § 2255 motion be **DENIED**.

## I.    Background

The federal grand jury for the Northern District of Georgia indicted Movant on seven counts, including Count One, a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy – involving a criminal organization called "Sureños 13" or "SUR-13" and their felonious dealing in controlled substances, murder (including the April 24, 1999, murder of R.G.), attempted murder, and robbery; Count Twenty-Two,

conspiracy to possess marijuana with intent to distribute; and Count Thirty-One, conspiracy to possess methamphetamine and marijuana.  (See Doc. No. 987 at 2-16, 27-28, 31-32).  Movant, represented by Richard A. Grossman, pleaded not guilty. (Doc. No. 559, Attach.).  The jury found Movant guilty on Counts One, Twenty-Two, and Thirty-One.  (Doc. No. 902).  On February 19, 2008, the Court sentenced Movant to a total life term of imprisonment.  (Doc. No. 1051).  Movant appealed, still represented by Mr. Grossman, and the Eleventh Circuit Court of Appeals affirmed. United States v. Flores, 572 F.3d 1254, 1271 (11th Cir. 2009), cert. denied, _ U.S. _, 130 S. Ct. 1108 (2011).

In his § 2255 motion, Movant raises the following grounds for relief: (1) counsel, at trial and on appeal, provided ineffective assistance in regard to Movant's speedy trial rights; (2) counsel, at trial and on appeal, provided ineffective assistance in regard to whether the jury venire represented a fair cross section of the community as to Hispanics; (3) the prosecutor violated Movant's  due process rights by stating in opening that co-defendants had pleaded guilty to the same crimes with which Movant was charged; (4) counsel ineffectively failed to raise on appeal the prosecutor's improper opening statements; (5) the prosecutor violated Movant's due process rights by vouching for government witnesses during opening statements

2

(mentioning their plea agreements) and submitting witnesses' plea agreements to the jury; (6) counsel ineffectively failed to raise on direct appeal the prosecutor's misconduct in submitting witnesses' plea agreements to the jury; (7) the prosecutor violated his due process rights when government witnesses Isaac Alamia and Yonic Abraham lied on the witness stand; (8) counsel ineffectively failed to raise on direct appeal the prosecutor's misconduct in regard to Alamia's and Abraham's allegedly false testimony; (9) counsel ineffectively failed to move the court for curative instructions in regard to prosecutorial misconduct pertaining to Alamia's and Abraham's testimony and failed to raise the matter on direct appeal; (10) the trial judge's medication affected his ability to carry on with trial and violated Movant's right to a fair trial; (11) counsel ineffectively failed to raise on direct appeal the matter of judicial impairment; (12) counsel ineffectively failed to move that the RICO conspiracy charge be dismissed on the grounds that a juvenile cannot be charged with conspiracy; and (13) cumulatively, counsel's ineffective assistance caused prejudice. (Doc. No. 1284; Attach.).  Movant also asserts ineffective assistance of appellate counsel as the reason he did not raise available claims on direct appeal.  (Id. at 32).

3

**II.   28 U.S.C. § 2255 Standard**

A district court is authorized by 28 U.S.C. § 2255 to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  However, § 2255 relief is limited, and "[o]nce [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted[.]"  United States v. Frady, 456 U.S. 152, 164 (1982).  An alleged error "'decided adversely to a defendant on direct appeal . . . cannot be re-litigated in a collateral attack under section 2255.'"  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation omitted).  Further, "a defendant must assert all available claims on direct appeal," and a collateral challenge to a federal conviction and sentence "may not be a surrogate for a direct appeal."  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004).   Within this framework, a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of the facts pertinent to such a claim.  Massaro v. United States, 538 U.S. 500, 505-09 (2003).  Claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally

barred absent a showing of "cause for the default and actual prejudice resulting from the alleged error" or a showing of a fundamental miscarriage of justice that "'probably resulted in the conviction of one who is actually innocent[.]'" Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).

To establish cause, a movant must show that "some objective factor external to the defense impeded [his or] counsel's efforts to comply with the [relevant] procedural rule" or that the default resulted from ineffective assistance of counsel. Murray, 477 U.S. at 488. To establish prejudice, a movant must show error that "'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Cross v. United States, 893 F.2d 1287, 1292 (11th Cir. 1990) (citation omitted; emphasis in original). To make a credible showing of actual innocence, Movant must, "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial[,]" demonstrate that "it is more likely than not that no reasonable juror would have convicted him . . . ." Schlup v. Delo, 513 U.S. 298, 324, 327 (1995).

5

### III.   Discussion

### A.   Ground One – Counsel's Assistance on Speedy Trial Rights

#### 1.   Background

The grand jury initially indicted Movant in July 2005 (charging Movant on Counts One, Twenty-One, Twenty-Two, and Twenty-Eight).  (Doc. No. 1).  Movant was arrested on August 6, 2005, and arraigned on August 8, 2005.  (Docket Entry on 8/6/2005 and Doc. No. 44).  Trial was set for September 5, 2006.  (Doc. No. 483).  On August 30, 2006, the Court granted the motions to continue filed by two co-defendants, (Doc. No. 491), and, on September 12, 2006, the Court reset trial for March 5, 2007, (Doc. No. 492).  A superseding indictment was filed on September 20, 2006 (charging Movant on Counts One through Four, Twenty-One, Twenty-Two, and Thirty-One).  (Doc. No. 498).  It was determined that two trials were necessary to accommodate all the defendants in this case, with one trial to commence on March 5, 2007, and the next (Movant's) to commence on June 4, 2007.  (See Doc. Nos. 722, 754; Docket Entry 5/1/2007).  On May 30, 2007, the Court granted the government's motion to continue the trial until August 13, 2007.  (Doc. No. 805).  On June 15, 2007, Movant, upon adopting a co-defendant's motion, filed a motion to dismiss the indictment based on a speedy trial challenge.  (Doc. Nos. 803, 812).  The Court found that Movant had

6

failed to state with specificity when he believed the seventy-day clock had expired and ordered him to file a brief in support of his motion to dismiss by July 6, 2007. The Court advised Movant that the failure to file a brief would be construed as withdrawing the motion to dismiss. (Doc. No. 816 at 1-2). Movant did not file a brief in support.

On August 13, 2007, the Court nonetheless addressed Movant's motion and found that from his arraignment on August 8, 2005, through the trial date of August 13, 2007, a total of five days had run under the Speedy Trial Act and that there was no violation. (Doc. No. 851 at 11-12). The Court reviewed the time excluded for (1) proceedings concerning the defendant (his arraignment and detention hearing), (2) delay from joining a co-defendant, (3) the period during which pre-trial motions remained pending, and (4) continuances that were based on findings that the ends of justice (including concerns for public safety) were served by such continuances. (Id. at 6-12; see also Doc. No. 491). Accordingly, the Court denied Movant's motion to dismiss. (Doc. No. 851 at 16). Also on August 13, 2007, trial commenced. (Doc. No. 855). On August 14, 2007, a first redacted indictment was filed. (Doc. No. 892). On September 4, 2007, a second redacted indictment was filed. (Doc. No. 893). On October 10, 2007, a third redacted indictment was filed. (Doc. No. 987).

7

## 2.   **Parties' Arguments**

Movant argues that counsel provided ineffective assistance by failing to seek a dismissal of the charges against him based on a violation of his speedy trial rights and by failing to raise the issue on appeal.  (Doc. No. 1284, Attach. at 1-4).  Although Movant's argument is less than clear, he appears to raise four issues.  First, Movant contends that none of the changes in the superseding/redacted indictments (filed September 20, 2006, August 14, 2007, September 4, 2007, and October 10, 2007) were relevant to him and they delayed his trial, causing prejudice because the government's case became "much . . . stronger than the array of the evidence would have exposed [sic] had [Movant] been tried in accordance to the 70 day period as outlined in 18 U.S.C. § 3161(c)."  (Id. at 1-3).  Second, Movant complains that trial was originally set for September 2006 and rescheduled twice, to August 13, 2007.  (Id. at 2).  Third, Movant asserts that, under Zedner v. United States, 547 U.S. 489 (2006),[1] a defendant may not prospectively waive application of the Speedy Trial Act.  (Doc. No. 1284, Attach. at 2).  Fourth, Movant (1) asserts that, under Bloate v. United States, _ U.S. _,

---

[1]The court in Zedner held that a defendant could not prospectively waive application of the Speedy Trial Act.  Id. at 503.

130 S. Ct. 1345 (2010),[2] time to prepare pretrial motions is not automatically excludable from the seventy-day time period; (2) asserts that the government's pre-trial motion preparations and pre-trial preparations were not automatically excludable; and (3) complains that the court made no ruling "in regards to what pre-trial proceedings were considered 'excluded'" and wrongly applied Bloate. (Doc. No. 1284, Attach. at 2-4). Movant contends that counsel's failure to challenge the violation of his speedy trial rights prejudiced him as the charges against him would have been dismissed on a proper motion. (Id. at 4).[3]

The government responds that Movant's counsel's failure to file a brief as directed by the Court waived the speedy trial issue and that counsel was not deficient because there was no speedy trial violation. (Doc. No. 1307 at 9-15). In reply, Movant argues that counsel was ineffective for failing to argue that the speedy trial clock did

---

[2]The court in Bloate held that time spent preparing pretrial motions is not automatically excludable from the speedy trial time period and that the district court must make specific findings before granting a continuance to prepare pretrial motions. Id. at 1357-58.

[3]Movant originally sought a stay to await the decision in United States v. Tinklenberg, _ U.S. _, 131 S. Ct. 2007 (2011). (See Doc. No. 1331). In that case, the Supreme Court held that, under 18 U.S.C. § 3161(h)(1)(D), the speedy trial clock was automatically stopped "upon the filing of a pretrial motion irrespective of whether the motion has any impact on when the trial begins." Tinklenberg, 131 S. Ct. at 2012. That decision does not effect the recommendation in Movant's case.

AO 72A
(Rev.8/82)

not stop when he was re-indicted and again asserts that appellate counsel was ineffective for failing to raise the speedy trial issue on appeal. (Doc. No. 1325 at unnumbered pages 3, 5).

### 3. Law and Disposition

#### a. Ineffective Assistance of Trial Counsel

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner/movant must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. Id. at 690-92. This Court may resolve an ineffective-assistance-of-counsel claim based on either of the above prongs. Atkins v. Singletary, 965 F.2d 952, 959 (11th Cir. 1992).

Under the first prong, a movant must show that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Under the second prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

10

outcome." <u>Id.</u> at 694.  The movant has the burden of establishing his ineffective-assistance claim by a preponderance of competent evidence.  <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

The Speedy Trial Act provides that a defendant's trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).  The Act excludes from the computed time (1) "[a]ny period of delay resulting from other proceedings concerning the defendant," including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"; (2) "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"; or (3) a "continuance granted by any judge . . . , if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."   18 U.S.C. § 3161(h)(1)(D), (h)(6), (h)(7)(A).

Here, counsel did seek that the charges be dismissed based on a violation of Movant's speedy trial rights, and the motion to dismiss addressed the trial being reset

11

and the filing of the September 20, 2006, superseding indictment (concerns Movant has raised in his current § 2255 motion).  (<u>See</u> Doc. Nos. 803, 812).  Although the Court warned Movant that failure to file a brief in support would be construed as withdrawing that motion, the Court nonetheless addressed Movant's motion in full and determined that there was no speedy trial violation.  (Doc. No. 851 at 5-12).  Any attempt to show prejudice fails because, even if counsel had not "withdrawn" the speedy trial motion, the result would have been the same.  Further, the other matters of which Movant complains – the alleged delay caused by the redacted indictments, an impermissible prospective waiver of speedy trial rights, and exclusion of time to prepare pretrial motions – are without merit and do not show that counsel was ineffective.  The August 14, September 4, and October 10, 2007, redacted indictments were filed after trial commenced and could not have delayed trial.  Movant does not show that he or a co-defendant entered into a prospective waiver of speedy trial rights. Movant also points to no time that the court excluded so that the government could prepare pretrial motions.  Plaintiff fails to show ineffective assistance of trial counsel on this issue.

12

### b.   Ineffective Assistance of Appellate Counsel

"The standards applicable to [a movant's] claims of ineffectiveness against trial counsel apply equally to the charges leveled against his appellate lawyer. . . .  To prevail, [a movant] must demonstrate both that his appellate counsel's performance fell below reasonable professional standards and that he was prejudiced by his attorney's substandard performance."  Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (citations omitted).  On appeal, counsel must be "'highly selective about the issues to be argued[.]'"  Id. at 1188 (citation omitted).  "[T]he Sixth Amendment does not require appellate advocates to raise every non-frivolous issue" and "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious."  Heath v. Jones, 941 F.2d 1126, 1130-31 (11th Cir.1991) (citation omitted).  Absent a showing "regarding the effect, if any, that a different [appellate] brief would have had on the outcome of proceedings[,]" under Strickland, there is no ineffective assistance of appellate counsel.  Johnson, 256 F.3d at 1188.

As indicated above, three of the issues raised by Movant on the speedy trial issue are without merit, and appellate counsel, thus, was not ineffective for failing to raise them on appeal.  Further, Movant's conclusory assertions that the filing of the September 20, 2006, superseding indictment and that the trial being reset violated his

AO 72A
(Rev.8/82)

speedy trial rights does not show how the court's calculation of excluded time was wrong.  Movant has simply failed to come forward with a viable argument that appellate counsel could have raised on appeal.  Ground One fails.

**B.**      **Ground Two – Counsel's Assistance on the Jury Pool Issue**

   **1.**      **Parties' Arguments**

Movant argues that counsel performed ineffectively in regard to his right to have a jury chosen from a pool that included a fair cross section of the Hispanic community. (Doc. No. 1284, Attach. at 5-8).  Movant contends that, during his trial,  Hispanics represented 2.7 percent of the voters in the "Atlanta areas"; that there should have been at least seventeen to twenty-six Hispanics in his "jury po[o]l" and there were none; and that there were no Hispanics on the panel for voir dire in his case.  (Id. at 6-7).  Movant asserts that counsel, at trial, was ineffective and unprepared to present facts showing a violation of his fair-cross-section rights and that appellate counsel also failed to raise the issue on appeal.  (Id. at 6-7).

The government responds that this ground fails because Movant does not show an under representation of Hispanics in the venire and, even if Hispanics were under represented, that it was not due to systematic exclusion.  (Doc. No. 1307 at 16-17).  In reply, Movant asserts that he presented documentation "that reflected the Hispanics in

14

the community as well as in the whole state of Georgia" and cites to his "affidavit and Hispanic voters sheet[.]"[4]  (Doc. No. 1325 at unnumbered page 7).

### 2.    Law and Disposition

The same standard for counsel's performance at trial and on appeal, discussed above, applies.  The Atlanta Division of the Northern District of Georgia maintains a master jury wheel of approximately ten percent of the registered voters in the Atlanta division, randomly selected (at a minimum approximately 60,0000).  See LR, NDGa., Appendix A ¶ IV.  The Clerk of Court periodically, and at random, draws names from the master jury wheel, and, unless those persons are excused, exempted, or disqualified, they are placed on the qualified jury wheel – containing at all times at least 300 names.  Id. ¶¶ V-X.  The Clerk draws at random from the qualified jury wheel to form grand and petit jury panels.  Id. ¶ XI.  Under the Sixth and Fourteenth Amendments, "jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and

---

[4]Movant attached information from the Pew Research Center regarding diversity in the 2008 electorate nationwide, census information regarding the Hispanic population in the United States and Georgia, and a list of active voters for Georgia counties.  (Doc. Nos. 1284, Attachs.).  The Court has reviewed those documents and discerns no listing of the percentage of registered Hispanic voters in the Northern District of Georgia.

thereby fail to be reasonably representative thereof." Taylor v. Louisiana, 419 U.S. 522, 538 (1975) ("It should . . . be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.").

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).

> Assessing the fairness and reasonableness of a group's representation requires a comparison between the percentage of the "distinctive group" on the qualified jury wheel and the percentage of the group among the population eligible for jury service in the division. . . . Although precise mathematical standards are not possible, this circuit has consistently found that a prima facie case of underrepresentation has not been made where the absolute disparity between these percentages does not exceed ten percent.

United States v. Rodriguez, 776 F.2d 1509, 1511 (11th Cir. 1985) (citation omitted).

The litigant raising a fair-cross-section challenge has "the burden of showing lack of

fair and reasonable representation." United States v. Carmichael, 560 F.3d 1270, 1281 (11th Cir. 2009).

Presuming that Hispanics are a distinctive group, United States v. Weaver, 267 F.3d 231, 240 (3rd Cir. 2001) ("African-Americans and Hispanics are 'distinctive' groups for the purposes of a fair cross-section analysis."), Movant still does not show a violation of his fair-cross-section rights or that counsel was ineffective at trial or appeal on this issue.  Even if – based on Movant's contentions regarding the voters in the "Atlanta areas" – the Court gives Movant the benefit of the doubt that 2.7 percent of registered voters within the Northern District of Georgia are Hispanic, he fails to meet his burden of showing that the percentage of Hispanics in the qualified jury pool was not a fair and reasonable representation.  (See Doc. No. 1284, Attach. at 6). Although Movant states that at "[his] voir dire there [were] no Hispanics represented form [sic] the community[,]" (id. at 6), he has not shown the number of Hispanics on the qualified jury wheel or that there were no Hispanics on that wheel.  Further, the disparity between zero Hispanics on Movant's jury panel and an ideal 1.3 Hispanics on a jury panel of 51[5] is insufficient to show that Hispanics were not fairly and

---

[5]The voir dire records show 51 potential jurors for Movant's trial.  (Doc. No. 1183 at 55).  For a panel of 51, complete parity (based on the 2.7 percentage) would be met with 1.3 Hispanic persons.

17

reasonably represented in the qualified jury wheel. Moreover, Movant presents nothing to shows a systematic exclusion of Hispanics that is "inherent in the particular jury-selection process utilized." Duren, 439 U.S. at 366. In conclusion, Movant presents no fair-cross-section argument (1) that counsel was incompetent for failing to raise at trial or appeal or (2) for which there is a reasonable probability that it would have changed the outcome at trial or appeal. Ground Two fails.

**C. Grounds Three through Six – Prosecutorial Misconduct Regarding Opening/Plea-Agreements/Vouching and Ineffective Assistance of Appellate Counsel**

**1. Background**

In opening, the prosecution stated,

> Some of these people have pled guilty, and there are some gang members who have pled guilty in other criminal cases, and they are going to come and talk to you about their crimes and their experiences is Sur-Trece.[6] The have accepted responsibility for their actions, and as part of accepting responsibility, they will testify.
>
> Now, some of these witnesses hope to get a benefit from testifying. Specifically, they hope that they will get a lower sentence because of their truthful testimony.

(Doc. No. 1128 at 59-60). In opening, Movant stated,

---

[6]Sur-13 is sometimes referred to as Sur-Trece. (See Doc. No. 1128 at 50).

18

> You will hear from cooperating witnesses who will say absolutely anything to satisfy the government. . . . We will demonstrate to you that the motivation for the cooperating witnesses to lie to you about [Movant] is the strongest motivation that a human being could have, freedom from prosecution, reduced prison time, avoiding deportation.
>
> . . . [T]his cooperator testimony is not credible, it is not believable . . . .

(Id. at 90). At the end of trial, the Court charged the jury as follows:

> The testimony of some witnesses must be considered with more caution than the testimony of other witnesses. . . . [A] witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain some favorable treatment in his or her own case may have a reason to make a false statement because the witness wants to strike a good bargain with the government.
>
> So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

(Doc. No. 1141 at 2556-57).

### 2. **Grounds Three and Five – Prosecutorial Misconduct Regarding Opening/Plea-Agreements/Vouching**

In Ground Three, Movant argues that the prosecutor violated his due process rights by stating in opening that co-defendants had pleaded guilty to the same crimes with which Movant had been charged. (Doc. No. 1284, Attach. at 8-10). Movant asserts that, based on those comments, the jury would have inferred that "since the co-defendant[]s plead [sic] guilty of the charges . . . [Movant] must be guilty" – thus,

19

lifting the government's burden of proof.  (Id. at 9).  In Ground Five, Movant argues that the prosecutor violated his due process rights by vouching for government witnesses during opening statements (by referring to their plea agreements) and in submitting their plea agreements to the jury.  (Doc. No. 1284, Attach. at 12-14). Movant asserts that the government used the plea and immunity agreements and promises of potential rewards both (1) to influence its witnesses' testimony and (2) to create the inference that since its "witnesses had either pleaded guilty or had been granted immunity, then a R.I.C.O. . . . conspiracy . . . must exist and [Movant] must be a part of it" – allowing Movant to be convicted based on questionable testimony. (Id. at 12-13).

The government argues that there was no error in the government disclosing the guilty pleas and that, moreover, Movant's claims should have been raised on direct appeal and are not cognizable in a § 2255 motion.  (Doc. No. 1307 at 18).  Movant's reply does not add significantly to his prior argument.  (Doc. No. 1325 at unnumbered pages 9-11).

Movant did not raise this matter on direct appeal, and, as stated earlier, claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent a showing of cause and prejudice or actual innocence.

20

Mills, 36 F.3d at 1055.  Movant has raised ineffective assistance of appellate counsel

as cause.  However, as discussed below, that claim fails.  Movant does not otherwise

overcome his default, and review of Grounds Three and Five is barred.

3. **Ground Four and Six – Appellate Counsel's Assistance on the Issue of Prosecutorial Misconduct in Regard to Opening/Plea-Agreements/Vouching**

a. **Parties Arguments**

In Ground Four, Movant argues that counsel was ineffective for failing to raise

on appeal the prosecutor's improper opening statements regarding the plea agreements

of co-conspirators.  (Doc. No. 1284, Attach. at 10-11).[7]  Movant asserts that the

_____

[7]Movant relies on, among other things, United States v. Corona, 551 F.2d 1386, 1388 (5th Cir. 1977) (finding the prejudicial effect was great when the prosecution referred to the plea agreement of a non-testifying co-conspirator who was not subject to cross-examination).  As indicated in the discussion below, Movant complains regarding persons who testified, and Corona does not help him.

In related Grounds Three and Five, Movant relies on, among other things, the Ninth Circuit's opinion in United States v. Roberts, 618 F.2d 530 (9th Cir. 1980), in which case the prosecutor told the jury that the prosecution witness would not lie because his plea agreement (which was submitted to the jury) required him to tell the truth, the plea agreement could be called off if he lied, and a detective was monitoring his testimony.  Roberts, 618 F.2d at 533-34.  The court found that the error was not harmless and reversed.  Id. at 534-35, 537.  The court cautioned against admitting into evidence the portion of a plea agreement in which a defendant promised to testify truthfully.  Id. at 535-36.  As indicated in the discussion below, the Eleventh Circuit, whose opinions are binding on this Court, has addressed admission of plea agreements, including an agreement to testify truthfully, and the Ninth Circuit's opinion does not

21

government's case looked stronger when the co-defendants who had pleaded guilty "gave testimony in front of the jury." (Doc. No. 1284, Attach. at 11).  In Ground Six, Movant argues that counsel provided ineffective assistance by failing to raise on direct appeal the prosecutor's misconduct in referring to witnesses' plea agreements during opening and presenting the plea and immunity agreements during trial.  (Id. at 14-17) (listing plea agreements that were admitted into evidence).[8]

The government responds that appellate counsel performed reasonably because there was no error in the government's conduct.  (Doc. No. 1307 at 18).  Movant's

---

change the recommendation in this case.

[8]In Ground Six and related Ground Five, which deal with the admission into evidence of the plea agreements, Movant does not complain regarding the admission of a plea agreement for anyone who did not testify, (see Doc. No. 1284, Attach. at 12-17), and, in fact, contends that "each co-defendant that plead [sic] guilty to the same charge [Movant] was on trial for gave testimony in front of the jury" and that the government relied upon the "testimonies form [sic] alleged co-conspirators whose plea agreements rested upon [giving] testimony helpful" to the government.  (Id. at 11-12). The Court has reviewed Movant's list of admitted plea agreements, and it appears that they were for testifying witnesses.  (See id. at 14; see also Trial Transcript Table of Contents in Doc. Nos. 1129-1132, 1134-1139).  It is noted that Movant mentions that Enrique Chaves Ramirez entered into an immunity agreement and did not testify at trial. (Doc. No. 1284, Attach. at 12).  Movant, however, does not contend that Ramirez entered into a plea agreement that was entered into evidence or cite to any particular prosecutorial comments regarding the grant of immunity to Ramirez.  Further, it is noted that Ramirez was available for cross-examination during his deposition testimony.  (See Doc. No. 795).

22

reply does not add significantly to his prior argument.  (Doc. No. 1325 at unnumbered pages 11-13).

### b.  <u>Law and Disposition</u>

The law regarding ineffective assistance of counsel that was stated earlier applies.  "A co-defendant's guilty plea or conviction may be brought out at trial provided that 1) the evidence serves a legitimate purpose and 2) the jury is properly instructed about the limited use they may make of it."  <u>United States v. DeLoach</u>, 34 F.3d 1001, 1003 (11th Cir. 1994).  When "'the codefendant is a witness at trial, subject to the rigors of cross-examination, disclosure of the guilty plea to blunt the impact of attacks on [his] credibility serves a legitimate purpose and is permissible.'"  <u>United States v. Melton</u>, 739 F.2d 576, 579 (11th Cir. 1984) (citation omitted).  However, when a co-defendant or co-conspirator is not subject to cross-examination, the admission of his guilty plea or conviction is plain error.  <u>United States v. Eason</u>, 920 F.2d 731, 734 (11th Cir.1990) ("'The jury may regard the issue of the remaining defendant's guilt as settled and the trial as a mere formality.'") (citation omitted).  Evidence regarding guilty pleas, thus, may be used to bolster the credibility of the co-defendant witness but may not be used as evidence of a defendant's guilt.  <u>DeLoach</u>, 34 F.3d at 1004.

23

> "Attempts to bolster a witness by vouching for his credibility are normally improper and error." . . .  The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. . . .  This test may be satisfied in two ways.  First, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity. . . .  Secondly, a prosecutor may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony.

United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983) (citations omitted).

Generally, the admission into evidence of a plea agreement and accurate comment thereon by the prosecutor is not improper vouching or error.  United States v. Dennis, 786 F.2d 1029, 1046-47 (11th Cir. 1986).  Further, it is proper to introduce the "truth-telling portion" of a plea agreement when a witness's credibility is attacked by the defense during opening or on cross-examination.  United States v. Cruz, 805 F.2d 1464, 1479-80 (11th Cir. 1986); see also United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996) (finding that prosecutor did not improperly vouch for government witness in questioning him about his agreement to testify truthfully).

Movant's arguments show nothing that counsel was incompetent for failing to raise on appeal.  Further, had counsel raised the arguments Movant now raises, there is no reasonable probability that they would have changed the outcome on appeal.  Movant nowhere indicates that a plea agreement was admitted into evidence (or

24

referred to by the prosecutor) for a non-testifying co-conspirator.  See supra note 8.

Movant, in fact, states that those co-conspirators did provide testimony and thus were

subject to cross-examination.  (See Doc. No. 1284, Attach. at 11-12).  There is no error

in admitting a co-conspirator's plea agreement, or in accurately commenting on that

plea agreement, when the co-conspirator testifies.  This is especially so when the

defendant has attacked the credibility of the testifying co-conspirators, as Movant did

in his opening.  The plea agreements and comments thereon, thus, served a legitimate

purpose, and, further, the court gave proper instructions regarding the use of such co-

conspirator testimony.  See DeLoach, 34 F.3d at 1003-04.  Grounds Four and Six fail.

**D.**      **Ground Seven through Nine – Prosecutorial Misconduct Regarding False Testimony and Ineffective Assistance of Counsel**

    **1.**      **Background**

The background in regard to Alamia's alleged false testimony follows.  At trial,

before Alamia testified, co-defendant defense counsel, Jay Lester Strongwater,

renewed a request for Alamia's grand jury testimony and debriefing records.  (Doc.

No. 1130 at 444).  The government responded that they had provided the defense with

notice that Alamia had been in a car during a murder and that defense counsel could

cross-examine him on that if they wanted to.  (Id. at 445).  The government provided

the Court, for in camera review, the un-redacted material which related to the uncharged murder at which Alamia had been present. (See id. at 459-460; Doc. No. 1131 at 620).

On direct, Alamia admitted that he had previously been convicted for armed robbery. (Doc. No. 1130 at 475-76). On cross-examination, co-defendant defense counsel, Mr. Michael H. Saul, asked, "are there any other crimes, violent crimes?" Alamia responded, "No." (Doc. No. 1131 at 589). On cross-examination by Mr. Strongwater, Alamia further stated that he did not think he had told the government about any violent crime other than the armed robbery. (Id. at 606). Mr. Strongwater sought to refresh Alamia's recollection with the un-redacted Grand Jury testimony. (Id. at 607). The Court denied that request. (Id.). Following Alamia's testimony, the government again contended that no portion of the un-redacted material should be given to the defense. (Doc. No. 1131 at 620). The Court agreed. (Id. at 620, 627). Mr. Strongwater moved for a mistrial and argued that when Alamia testified that he had not been involved in any violent criminal activity, he should have been allowed to refresh his recollection with the un-redacted material regarding Alamia's presence during a murder. (Id. at 629-30). The government responded that defense counsel was provided notice regarding the matter; that counsel could have asked Alamia if he was

26

present during a murder; that, if counsel had done so, the analysis for turning over the un-redacted material may have been different; but that counsel had not asked that question.  (Id. at 629-31).  The Court denied a mistrial and informed counsel that he could recall Alamia when he presented his defense case.  (Id. at 632).  Movant adopted the motions regarding the Alamia issue.  (Id.).  Alamia was not recalled by any defense counsel at the end of the government's case.  (See Doc. Nos. 1139-40).

The background as to Abraham's allegedly false testimony is as follows.  On cross-examination, Mr. Saul queried, "The government actually has made some promises to you."  Abraham responded, "No."  Mr. Saul asked, "None?  They haven't promised you that if you help them, they will seek – that it would consider seeking a sentence reduction?"  Abraham responded, "No . . . ."  (Doc. No. 1134 at 1193).  Mr. Saul later stated to the Court that he had a letter from the government expressing that the prosecutor had "indicated" to Abraham that it "would consider seeking a sentence reduction for him."  (Id. at 1198).  Mr. Saul stated that he could introduce that letter for impeachment purposes later in the trial, and the Court stated that the parties could work that out "before we get to your part of the case."  (Id.).  The record does not indicate that Abraham was recalled.

27

2.    **Ground Seven - Prosecutorial Misconduct Regarding False Testimony**

Movant argues that the prosecutor violated his due process rights when government witnesses Alamia and Abraham lied on the witness stand. (Doc. No. 1284, Attach. at 17-21).  Movant argues that Alamia testified falsely that the only violent crime he had been involved with was a juvenile robbery and that the government allowed that testimony although it knew it was false and that Alamia had been involved with a murder for which he would not be charged.  (Id. at 18).  Movant also (1) cites the cross-examination of Abraham, reviewed above, where he testified that the government had not promised him that they would consider seeking a sentence reduction if he testified and (2) asserts that the government allowed that testimony although it knew that it was false and knew that it had indicated to Abraham that it would consider seeking a sentence reduction.  (Id. at 19).  Movant asserts that the perjured testimony "contaminated" the evidence relied on by the jury and that he is actually innocent.  (Id. at 21).

On Alamia, the government construes Movant's claim as a claim that there was a Brady violation[9] and asserts that there was no such violation.  (Doc. No. 1307 at 20).

---

[9]See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due

28

On Abraham, the government argues that he did not commit perjury because there was no promise that his sentence would be reduced. (Id. at 20-21). In reply, Movant asserts that the Court's decision that the grand jury testimony was not Brady material does not address his assertion that the government knowingly allowed perjured testimony. (Doc. No. 1325 at unnumbered pages 15). Otherwise, Movant's reply does not add significantly to his prior argument. (See id. at unnumbered pages 13-18).

Movant did not raise this matter on direct appeal, and, as stated earlier, claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent a showing of cause and prejudice or actual innocence. Mills, 36 F.3d at 1055. Movant has raised ineffective assistance of appellate counsel as cause. However, as discussed below, that claim fails. Although Movant asserts that he is actually innocence, he fails to come forward "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial[,]" to demonstrate that "it is more likely than not that no reasonable juror would have convicted him . . . ." Schlup, 513 U.S. at 324, 327. Accordingly, Movant does not overcome his default by showing

---

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

actual innocence or otherwise overcome his default, and review of Ground Seven is barred.

### 3.    Ground Eight - Appellate Counsel's Assistance on the Issue of Prosecutorial Misconduct Regarding False Testimony

Movant argues that counsel provided ineffective assistance by failing to raise on direct appeal the prosecutor's misconduct regarding Alamia's and Abraham's alleged false testimony, as presented in Ground Seven.  (Doc. No. 1284, Attach. at 21-23).  Movant asserts that, had counsel raised the issue, the outcome would have been different.  (Id. at 22).

The government responds that appellate counsel performed reasonably because there was no Brady violation by the government.  (Doc. No. 1307 at 19-20).  Movant's argument in reply does not add significantly to his prior argument.  (Doc. No. 1325 at unnumbered pages 18-19).

The law regarding ineffective assistance of counsel, stated above, applies. Under Giglio and Napue,[10] "'a conviction obtained by the knowing use of perjured

---

[10]See Giglio v. United States, 405 U.S. 150, 153-55 (1972) (holding that the government's use of uncorrected false testimony that key government witness had not received a non-prosecution promise in exchange for his testimony violated due process if the false testimony was material); Napue v. People of State of Ill., 360 U.S. 264, 269-72 (1959) (holding that the government's knowing use of uncorrected false testimony, that may have had an effect on the outcome of the trial, violates due

30

testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Boyd v. Allen, 592 F.3d 1274, 1307 (11th Cir. 2010) (citation omitted). "To establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." United States v. McNair, 605 F.3d 1152, 1208 (11th Cir. 2010), cert. denied, _ U.S. _, 131 S. Ct. 1599 (2011). There is no violation when the government has provided notice regarding the error to the court and defendant at a time when further exploration of the matter remains possible. United States v. Barham, 595 F.2d 231, 243 n.17 (5th Cir. 1979) ("[T]he Government can discharge its responsibility under Napue and Giglio to correct false evidence by providing defense counsel with the correct information at a time when recall of the prevaricating witnesses and further exploration of their testimony is still possible."); United States v. Decker, 543 F.2d 1102, 1105 (5th Cir. 1976) ("[W]e hold that the Government fulfilled its duty of disclosure by supplying appellants with its recollection of the true circumstances of the negotiations with the witnesses at a time when recall and further exploration of these matters was

_____

process).

31

still possible."). "[I]t is the prerogative of defense counsel to plan his or her cross-examination strategy," and "courts have been extremely reluctant to find a deprivation of due process when the prosecution has provided the defense with the necessary information and it can utilize the information . . . ." United States v. O'Keefe, 128 F.3d 885, 894 (5th Cir. 1997); see also United States v. Pepe, 747 F.2d 632, 677-78 (11th Cir. 1984) ("We are faced with a Giglio/Napue violation if a government witness gives false testimony concerning consideration he has received from the government, and the prosecutor acquiesces in this testimony by failing to correct it or provide the defense with information so that it may do so.").

Movant's argument in Ground Eight shows nothing that counsel was incompetent for failing to raise on appeal. Further, had counsel raised the argument Movant now raises, there is no reasonable probability that such argument would have changed the outcome on appeal. The government provided notice to defense counsel both in regard to Alamia's presence at an uncharged murder and in regard to its indication to Abraham that the government would consider seeking a sentence reduction. The government discharged its duty to disclose/correct at a time when "further exploration of the[] matters was still possible." Decker, 543 F.2d at 1105. Ground Eight fails.

### 4.   **Ground Nine - Counsel's Assistance on the Issue of Curative Instructions for False Testimony/Prosecutorial Misconduct**

Movant argues that trial counsel performed ineffectively in failing to move the court for curative instructions regarding the prosecutor's alleged misconduct in failing to correct Alamia's and Abraham's alleged false testimony and that appellate counsel provided ineffective assistance by failing to raise the matter on direct appeal. (Doc. No. 1284, Attach. at 23-24). Movant cites United States v. Gonzalez, 833 F.2d 1464, 1467 (11th Cir. 1987), for the proposition that curative instructions may be effective to cure improper prosecutorial remarks. (Id. at 23).

The government responds that no curative instructions were required because there was no perjury or error. (Doc. No. 1307 at 19-21). Movant's argument in reply does not add significantly to his prior argument. (Doc. No. 1325 at unnumbered pages 19-20).

As indicated in the discussion earlier, the government discharged it duty and did not commit a violation under Giglio/Napue. Therefore, counsel was not ineffective for failing to request a curative instruction based on prosecutorial misconduct and/or raise the matter on appeal. Ground Nine fails.

### E.   **Grounds Ten and Eleven - Judicial Misconduct/Impairment and Ineffective Assistance of Appellate Counsel**

33

### 1.   **Background**

During trial, the presiding judge, outside the presence of the jury, requested a defense attorney to wait a moment and then added that his patience was "a little short" as the result of taking medication from an allergic reaction.  (Doc. No. 1130 at 447-48).  The discussion with counsel continued, and after other defense counsel apologized for interrupting, the judge admitted lack of patience and went on to instruct counsel to avoid (1) popping up with additional matters that needed to be addressed outside the presence of the jury just as the security officer was bringing the jury back in and (2) starting to argue again after the court had ruled.[11]  (Id. at 459).  Also while the jury was out, the government approached with certain un-redacted material; the judge commented that it was going to be hard to keep up with "this much"; and in response, the government explained how it would file the material.  (Id. at 460).  Later, during testimony, a defense attorney had difficulty hearing Alamia, and the judge asked Alamia to repeat his answer.  (Id. at 475).  The trial judge later stated that he was having trouble understanding Alamia, admitted to some hearing loss, and asked that

---

[11]The trial judge later stated, again outside the presence of the jury, that he had stopped taking that medication – "that makes you anxious" – and that he had more nerves than the prior week and it would take counsel "about five seconds to get to the last one."  (Doc. No. 1133 at 1006).

AO 72A
(Rev.8/82)

the witness pull the microphone closer, and, after the jury had been excused, noted that Alamia had a heavy accent which had made him difficult to follow.  (Id. at 485-86; Doc. No. 1131 at 616).  Otherwise, during the examination of Alamia, the trial judge showed no difficulty understanding Alamia or counsel during various exchanges.  (See generally Doc. No. 1130 at 472 through Doc. No. 1131 at 616).  Also, during trial, the judge took a break to talk with several attorneys in a civil action and, afterward, stated (again out of the presence of the jury), "I just informed the whole group of lawyers in a tall building after listening to their dispute, to open the window, join hands and jump."  (Doc. No. 1136 at 1522).

### 2.   Ground Ten - Judicial Misconduct/Impairment

Movant asserts judicial misconduct/impairment and contends that the trial judge's medication affected his ability to carry on with trial and violated Movant's right to a fair trial.  (Doc. No. 1284, Attach. at 24-27).  Movant complains regarding the trial judge's various comments, i.e., the ones above, that he was a little short, did not have a lot of patience, and/or was anxious because of medication from an allergic reaction; that it was going to be hard to keep up; and that he had some hearing loss.  (Id. at 24-25).  Movant asserts that the alleged impairment resulted in unfair prejudice,

35

apparently including the government witnesses (Alamia and Abraham) being allowed to allegedly lie on the stand.  (Id. at 25, 27).

The government responds that the comments were not made before the jury and could not have prejudicially influenced the jury.  (Doc. No. 1307 at 22).   The government further argues that there is no evidence that the trial judge was impaired due to medication or illness, that the proffer of Abraham's testimony was carefully considered by the Court, and that no error resulted from the trial judge's alleged impairment.  (Id. at 22-23).  Movant replies that the trial judge did comment on his hearing loss before the jury and argues that the trial judge's alleged impairment ("impatience and obnoxiousness") (1) influenced his decision to allow Alamia's testimony without giving defense counsel full access to the un-redacted material and (2) caused him to state it would be hard to "keep up" with case files.  (Doc. No. 1325 at unnumbered pages 20-25).  Movant asserts that the issue should be considered on collateral review because failure to address it would result in a complete miscarriage of justice as he is actually innocent.  (Id. at unnumbered page 25).

Movant did not raise this issue on direct appeal, and, as stated earlier, claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent a showing of cause and prejudice or actual innocence.

Mills, 36 F.3d at 1055.  Movant has raised ineffective assistance of appellate counsel as cause.  However, as discussed below, that claim fails.  Although Movant asserts actual innocence, he has not come forward "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial[,]" to demonstrate that "it is more likely than not that no reasonable juror would have convicted him . . . ."  Schlup, 513 U.S. at 324, 327.  Movant does not otherwise overcome his default, and review of Ground Ten is barred.

**3.      Ground Eleven - Appellate Assistance on the Issue of Judicial Misconduct/Impairment**

Movant argues that appellate counsel performed deficiently by failing to raise on direct appeal the matter of judicial misconduct/impairment and that, had he raised it, the result on appeal would have been different.  (Doc. No. 1284, Attach. at 27-28).

The government argues that counsel performed reasonably on this issue because there was no judicial misconduct.  (Doc. No. 1307 at 23).  Movant contends in reply that the judicial misconduct was "of such a high degree of favoritism to the government" that it resulted in a complete miscarriage of justice.  (Doc. No. 1325 at unnumbered pages 25-26).

37

The law regarding ineffective assistance stated earlier applies.  Due process "requires a 'fair trial in a fair tribunal,' . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (1997) (citation omitted).  "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not show bias or partiality.  Liteky v. United States, 510 U.S. 540, 555-56 (1994) (addressing 28 U.S.C. § 455);[12] and see Lyell v. Renico, 470 F.3d 1177, 1186 (6th Cir. 2006) (applying Liteky to due process claim); United States  v. Couch, 896 F.2d 78, 81 (5th Cir. 1990) ("[S]ection 455 establishes a statutory disqualification standard more demanding than that required by the Due Process Clause."); see also Campbell v. United States Att'y General, No. 10-13773, 2011 WL 2206732, at *3 (11th Cir. June 7, 2011) (applying Liteky to due process claim).

---

[12]A United Stated district judge shall disqualify himself when his impartiality is subject to reasonable question based on, among other things, personal bias.  28 U.S.C. § 455(a), (b)(1).

38

Further, there is no due process violation in a trial judge being ill. <u>Buckelew v. United States</u>, 575 F.2d 515, 518 (5th Cir. 1978).[13]

Movant's arguments in Grounds Ten and Eleven show nothing that counsel was incompetent for failing to raise on appeal. Further, had counsel raised the arguments Movant now raises, there is no reasonable probability that such arguments would have changed the outcome on appeal. There was no judicial misconduct or incompetence of which to complain. The trial judge's expressions of impatience – which included instructing counsel, outside the presence of the jury, regarding the manner in which to present argument – were well within the bounds of acceptable and do not violate due process. <u>See</u> <u>Liteky</u>, 510 U.S. at 555-56. The court's concern with keeping up with the un-redacted material presented by the government (which concern the government addressed) shows awareness and competence, not incompetence. Further, no difficulty in hearing that amounted to a due process violation was shown by the court's request that Alamia pull the microphone closer – although the trial judge stated he had some

---

[13]It is noted that this Court considered an argument by co-defendant Israel Cruz (arguing that he was denied a fair trial based on the trial judge's remarks concerning his medication), similar to Movant's argument on this matter, and found that Mr. Cruz's counsel's decision not to raise on direct appeal "this meritless issue was reasonable." <u>See</u> Report and Recommendation at 22-23, docket entry 1336, <u>Cruz v. United States</u>, 1:05-CR-0324-CAP-6 (N.D. Ga. June 29, 2011).

AO 72A
(Rev.8/82)

hearing loss, there is no indication that the judge had any difficulty hearing counsel during the time Alamia was on the stand, Alamia had a heavy accent, and one of the defense attorneys earlier had asked that Alamia's testimony be repeated.  Further, the court's joke regarding a group of lawyers joining hands and jumping is insufficient to show a due process violation when, at most, it is a humorous expression – to attorneys and outside the presence of the jury – of frustration in dealing with a dispute between counsel in another case.  Ground Eleven fails.

**F.**     **Ground Twelve – Counsel's Assistance on Conspiracy Charge**

    **1.**     **Background**

On direct appeal, Movant argued that "the district court was not authorized to impose a sentence above 20 years' imprisonment because the racketeering act identified in the jury's special verdict . . . , [Movant's] murder of [Rogelio] Guzman, [could not] be used to enhance [his] sentence, as it was an act of 'juvenile delinquency' . . . ."  Flores, 572 F.3d at 1269.  The Eleventh Circuit stated:

> Once it has been established that a defendant's "participation in a conspiracy continued after his eighteenth birthday, then he may be tried as an adult. In his trial as an adult, only the strictures imposed by the Federal Rules of Evidence may limit the activities of the prosecutor."
>
>     [Movant] concedes that he could be tried for conspiracy as an adult and that evidence of crimes that were committed prior to his eighteenth

birthday could be used as evidence of his guilt, but paradoxically argues that this same evidence could not be used to enhance his sentence. . . . **[W]e conclude that in the context of a RICO conspiracy, if the defendant continues his participation in the activities of the conspiracy past the age of majority, those crimes may be considered for *both* determining guilt and his sentence.** [Movant] continued his activities in Sur-13 past the age of majority, and thus the district court did not err by utilizing 18 U.S.C. § 1963(a) to enhance [Movant's] sentence based on the jury's finding that he committed the Guzman murder.

Id. at 1269-70 (citation omitted) (emphasis added).

## 2.    Parties' Arguments

Movant argues (1) that counsel performed deficiently when he failed to move that the RICO conspiracy charge be dismissed on the grounds that a juvenile cannot be charged with conspiracy (Movant having been a juvenile in 1999, when the conspiracy started and when the murder of R.G. occurred) and (2) that he was prejudiced because, if the conspiracy counts had been dismissed, he would not have been subject to a life sentence. (Doc. No. 1284, Attach. at 29-31).

The government responds that the Eleventh Circuit has already concluded that Movant was properly charged and sentenced for a conspiracy that began when he was a juvenile. (Doc. No. 1307 at 23-24). In reply, Movant repeats his prior argument and asserts that "[i]t is difficult to say that a defendant who receives a life sentence on a non homicide offense but who was at the same time convicted of homicide is not in

41

some sense being punished in part for the homicide when the judge makes the sentencing determination."  (Doc. No. 1325 at unnumbered page 28).

**3.**     **Law and Disposition**

Counsel conceded that Movant "could be tried for conspiracy as an adult and that evidence of crimes that were committed prior to his eighteenth birthday could be used as evidence of his guilt," Flores, 572 F.3d at 1269-70, and, further, the Eleventh Circuit concluded "that in the context of a RICO conspiracy, if the defendant continues his participation in the activities of the conspiracy past the age of majority, those crimes may be considered for *both* determining guilt and his sentence."  Id. at 1270 (emphasis in original).  The Eleventh Circuit's opinion effectively has resolved this issue, and the Court should not reconsider the matter.  See Nyhuis, 211 F.3d at 1343.

**G.**     **Ground Thirteen – Cumulative Ineffective Assistance of Counsel**

Movant argues that, cumulatively, counsel's ineffective assistance caused prejudice. (Doc. No. 1284, Attach. at 31-33).  The government responds that there was no error and, thus, that there is no cumulative error.  (Doc. No. 1307 at 25).  In reply, Movant does not add significantly to his prior argument.   (Doc. No. 1325 at unnumbered pages 28-30).

In cases where "counsel is charged with multiple errors . . . prejudice may result from the cumulative impact of multiple deficiencies." Cooper v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc).  To succeed on a claim of cumulative error by counsel, Movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694 (emphasis added).  Movant must demonstrate, for the individual claims, that counsel's performance was professionally unreasonable and that, together, those errors prejudiced him.  This Movant has not done, and Ground Thirteen fails.

## IV.   **Certificate of Appealability ("COA")**

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been

43

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v . McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations marks and citation omitted).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009) (internal quotations marks omitted, citing Slack, 529 U.S. at 484).

Based on the above discussion, it is recommended that it is not debatable that Movant has failed to show that he is entitled to relief and that a COA is unwarranted. If the Court adopts this recommendation and denies a COA, the parties are advised that they "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

AO 72A
(Rev.8/82)

## V.    <u>Conclusion</u>

For the foregoing reasons, **IT IS RECOMMENDED** that this 28 U.S.C. § 2255 motion, (Doc. No. 1284), and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 27th day of September, 2011.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

45